IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Rhonda Spraker, | ) | |
| | ) | Civil Action No. 6:11-cv-03517- MGL-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| RTG Furniture Corp. of Georgia, | ) | |
| d/b/a Rooms To Go Furniture, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 31.] Plaintiff alleges sex discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(A) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Plaintiff filed this action on December 27, 2011. [Doc. 1.] On October 31, 2012, Defendant filed a motion for summary judgment. [Doc. 31.] Plaintiff filed a response on December 3, 2012 with additional attachments filed December 3 and 4, 2012 [Docs. 35–41], and Defendant filed a reply on December 10, 2012 [Doc. 43]. On March 18, 2013, the Court held a hearing on the motion. [Doc. 53.] Accordingly, the motion for summary judgment is ripe for review.

## BACKGROUND

**Plaintiff's Internal Complaints About Rodney Washington**

Plaintiff began working for Defendant in May 2007 as an assistant store manager in Greenville, South Carolina. [Doc. 41 at 10:15–19.] On June 20, 2007, Plaintiff complained to Randy McHose ("McHose"), a training manager who came into Plaintiff's store periodically, about store manager Rodney Washington ("Washington") engaging in sexually harassing behavior toward Plaintiff and another female employee. [*Id.* at 28:13–32:9.] Specifically, Plaintiff alleged Washington had looked her up and down, invited her out for drinks after work, and made sexual noises as she walked down aisles and that she had told Washington she did not go out with co-workers. [*Id.*] McHose told Plaintiff he would report the complaints to Elliott Kalick ("Kalick"), Regional Vice President of the Atlanta Division, and Gary Hand ("Hand"), Regional Vice President of the Charlotte Division. [*Id.* at 30:6–7.] On August 2, 2007, Plaintiff again reported to McHose that Washington was sexually harassing Plaintiff. [*Id.* at 30:10–12, 32:10–23.]

The next day, Washington came to the store with a friend and referred to Plaintiff and another female employee as "fine" and tried to convince them to go for drinks with Washington and his friend. [*Id.* at 34:14–37:13.] On September 1, 2007, Plaintiff reported the harassment to Kalick and Hand, specifically telling them about the incident with Washington and his friend as well as the other reports she had previously made to McHose. [*Id.* at 33:21–34:13; 37:14–25.] When Plaintiff reported the harassment to Kalick and Hand, she believed she had been subjected to sexual harassment. [*Id.* at 40:6–8.]

2

Plaintiff testified Washington continued to undress Plaintiff with his eyes, make noises as Plaintiff walked away, and talk about what Plaintiff wore until Washington was transferred to another store. [*Id.* at 42:6–43:22.] Washington was transferred from the Greenville store on September 28, 2008 and replaced by a new store manager, Mert Kenyon ("Kenyon"), on September 29, 2008.[1] [Doc. 31-6 at 3 ¶ 5, 8, 10.] After reporting the harassment to Kalick and Hand on September 1, 2007, Plaintiff did not raise any further concerns about harassment while Washington was the store manager. [Doc. 41 at 43:25–44:2, 44:8–21.]

**Plaintiff's 2008 Review, Raise, and Bonus**

Plaintiff alleges she was due an anniversary review in May 2008 but that Hand postponed the review until November 2008 in retaliation for her complaints about Washington. [*Id.* at 66:21–67:22.] After Plaintiff's review in November 2008, she received a $1,000 raise. [*Id.* at 82:15–21; Doc. 31-4 at 40.] In December 2008, Plaintiff was given a bonus that she alleges was lower than it could have been.[2] [Doc. 41 at 84:5–12; Doc. 36 at 8 ¶ 19.]

**Allegedly Retaliatory Treatment Toward Plaintiff As Assistant Manager**

Plaintiff alleges that, after learning about Plaintiff's previous complaints about Washington, Kenyon increased Plaintiff's work load. [Doc. 36 ¶ 21.] Additionally, Plaintiff alleges Kenyon gave her a document in June 2009 entitled "Things For Rhonda To Work

---

[1] It is not clear from the record before this Court why Washington was transferred to another store.

[2] It is not clear from the record what amount Plaintiff received as a bonus in December 2008. Plaintiff's intake questionnaire indicated the bonus was $1,500. [Doc. 31-4 at 47.] However, at her deposition, Plaintiff testified she thought her bonus was $800 [Doc. 41 at 84:5–12, 115:6–10], and Plaintiff's subsequent affidavit indicates the bonus was $800 [Doc. 36 ¶ 19].

On." [Doc. 41 at 89:23–19; Doc. 31-4 at 41; Doc. 1 ¶ 17.]  Plaintiff further alleges Kenyon put Plaintiff down to sales associates; had sales associates call Kenyon at home if they wanted to do something but Plaintiff had not approved it; interrupted Plaintiff's sales meetings; required Plaintiff to stand during store meetings but allowed Plaintiff's replacement to sit during store meetings; demeaned her in front of office staff, sales associates, and customers; and rendered Plaintiff ineffective as a manager.  [Doc. 36 ¶ 22.]

**Plaintiff's Demotion**

On July 30, 2009, Plaintiff met with Kenyon and Hand and was told she would be removed from the assistant store manager position. [Doc. 41 at 102:6–16.] On August 23, 2009, Plaintiff started on the sales floor as a sales associate.  [*Id.* at 111:7–9; Doc. 36 ¶ 25.]  Plaintiff alleges Chuck Kim became the assistant manager after she was removed from the position.  [Doc. 41 at 123:13–20.]

**Plaintiff's EEOC Charges and Subsequent Allegedly Retaliatory Treatment**

On September 16, 2009, Plaintiff signed an Equal Employment Opportunity Commission ("EEOC") intake questionnaire ("Intake Questionnaire"). [Doc. 31-4 at 42–48.] The Intake Questionnaire included the following allegations of discrimination:

- On August 3, 2007, Washington invited Plaintiff to have drinks with him and a friend.

- On September 1, 2007, Plaintiff reported the incident to Hand and Kalick.

- In May 2008, Plaintiff was due for an anniversary review but Hand postponed the review until November 2008, and Plaintiff received only a $1,000 raise in November 2008.

- Plaintiff received only a $1,500 bonus in December 2008.

4

- In May 2009, Plaintiff was due for an anniversary review but because Hand had postponed her review the year before, he changed her anniversary date to November.

- In June 2009, Kenyon began screaming at her in front of customers, removing her management ability, requiring her to pass everything through him, instructing sales associates to give Plaintiff directives, and instructing sales associates to report Plaintiff's every move.

- In mid-June or early-July 2009, Kenyon contacted Plaintiff by phone and cursed for allowing a picture to be removed from a wall and leaving the wall bare for 6.5 hours.

- In July 2009, Plaintiff's store won the "President's Cup" award and all credit was given to Kenyon; Plaintiff's name was never mentioned.

- In July 2009, she was advised by Kenyon and Hand that she would be demoted.

- On August 23, 2009, she was demoted to sales associate, and the assistant manager had been filled with an outside candidate named Chuck.

- On August 30, 2009, Kenyon made William Byron a key carrier, a responsibility that increases the employee's weekly salary by $100.

[Doc. 31-4 at 42–48.] At the hearing, Plaintiff submitted a notice of charge of discrimination dated September 24, 2009 that apparently accompanied the charge originally filed with the EEOC after Plaintiff submitted the Intake Questionnaire.[3] Another charge of discrimination was filed with the EEOC on December 7, 2009. [Doc. 31-4 at 51.] The December charge indicates the charge was originally filed September 23, 2009 and includes the following allegations of discrimination:

- Approximately eight months after Plaintiff complained to Hand of a sexually inappropriate comment made to her, Hand postponed Plaintiff's 2008 annual review from May to November, affecting Plaintiff's salary increase and year-end bonus.

---

[3]The record before the Court does not include the originally filed charge.

5

- In 2009, Hand moved Plaintiff's review date to November.

- In 2009, Kenyon screamed and cussed at Plaintiff and took away her managerial authority.

- On July 30, 2009, Plaintiff was told she was being demoted.

- On August 23, 2009, Plaintiff was demoted to sales associate and her position of assistant store manager was given to a younger, less qualified male.

[Doc. 31-4 at 48–55.]

Plaintiff alleges that, after she filed a charge with the EEOC, Kenyon began manipulating the sales numbers to cause Plaintiff to end up in the bottom third of sales and disciplined her for being in the bottom third of sales. [Doc. 36 ¶ 18; Doc. 41 at 144:17–23; Doc. 39 (written warning).] Plaintiff further alleges she believes there was a plan in place to create a "termination sandwich" where a male employee would have been fired, then Plaintiff, then another male employee to avoid having Plaintiff's termination look like discrimination or retaliation. [Doc. 36 ¶ 29; Doc. 41 at 144:24–145:3.] Plaintiff was not terminated but alleges that is because she contacted human resources with her concerns. [Doc. 41 at 145:13–17.] Plaintiff alleges she submitted five written complaints to the human resource department—on November 10, 2009; January 10, 2010; April 3, 2010; May 6, 2010; and June 29, 2010—detailing the harassment and retaliation she experienced in the store. [Doc. 36 ¶ 27; Doc. 37-5.]

Plaintiff alleges she requested the EEOC issue a right to sue on September 22, 2011; the letter issued on September 26, 2011, and Plaintiff received it on September 28, 2011. [Doc. 1 ¶ 26.] Plaintiff filed this action on December 27, 2011, alleging sex discrimination and retaliation claims pursuant to Title VII.

6

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp*., 759 F.2d 355,

365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Timeliness of Plaintiff's Claims**

Defendant first argues Plaintiff's claims are time-barred. [Doc. 31-2.] The Court agrees some of the discriminatory and/or retaliatory acts alleged by Plaintiff are time-barred.

Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th

8

Cir. 2000) (citing *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976)). In South Carolina, the charge must be filed within 300 days after an "alleged unlawful employment practice" occurred. 42 U.S.C. § 2000e–5(e)(1); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998)).  The failure to file a timely charge with the EEOC bars the claim in federal court. *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court.").

The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint.  *King*, 538 F.2d at 583 (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge'") (quoting *EEOC v. General Electric Co.*, 532 F.2d 359, 365 (4th Cir. 1976)).  Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred). Because the EEOC has the authority to investigate charges and take necessary action to reach a resolution of the claims, permitting a federal complaint to include allegations outside the scope of the predicate EEOC charge would circumscribe the EEOC's purpose as well as deprive the employer of notice of the plaintiff's charges.  *See Dorsey v. Pinnacle*

9

*Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) ("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." (internal quotations and citation omitted)). When a claim "raised under Title VII exceed[s] the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, [it is] procedurally barred." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

Plaintiff failed to address Defendant's time bar argument in her original response in opposition to the motion for summary judgment. Accordingly, the Court scheduled a hearing and directed the parties to be prepared to discuss at the hearing which date the Court should use as the EEOC charge filing date when determining whether Plaintiff's claims are time barred and which employment actions Plaintiff alleges were discriminatory and/or retaliatory. [Doc. 48 at 2.] At the hearing, Plaintiff, relying on *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), argued the Court should use the date Plaintiff filed her Intake Questionnaire under oath with the EEOC to determine whether Plaintiff's claims are time barred and further argued Plaintiff filed her Intake Questionnaire on September 16, 2009, the signature date on the Intake Questionnaire. However, following the hearing, Defendant filed a supplement to the hearing, indicating that, although Plaintiff presumably signed the Intake Questionnaire on September 16, 2009, EEOC records reflect that the Intake Questionnaire was received and processed by the EEOC on September 23, 2009. [Doc. 54; *see* Docs. 54-3 at 2 (EEOC case log, indicating the Intake Questionnaire was received on 9/23/09), 54-4 at 2 (EEOC charge detail inquiry, indicating the first office visit

and initial inquiry occurred on 9/23/2009), 54-7 at 2 (EEOC referral form to the South Carolina Human Affairs Commission, indicating the EEOC received the charge on Sep. 23, 2009).]  Additionally, the December 7, 2009 charge states, "Charge originally filed on September 23, 2009"[4] [Doc. 31-4], and Plaintiff testified the Intake Questionnaire was completed with her attorney and then Plaintiff took it to the EEOC [Doc. 41 at 112:2–114:6], indicating the date the Intake Questionnaire was signed may not have been the same date it was submitted to the EEOC.  Accordingly, it appears the intake questionnaire was submitted to the EEOC on September 23, 2009,[5] and Plaintiff's claims that occurred more than 300 days before September 23, 2009 are beyond the limitations period of Title VII.  Therefore, all claims relating to employment actions that occurred before November 27, 2008 are time-barred.

Plaintiff alleges the following adverse employment actions: her annual review was postponed from May 2008 until November 2008; she received a low raise in November 2008 after her annual review; she received a low bonus in December 2008; she was given a list of things to work on in June 2009 that was impossible for Plaintiff to complete and was generally treated poorly by Kenyon beginning in June 2009; she was demoted from assistant store manager to sales associate in August 2009; and, in December 2009, she

---

[4]Unfortunately, as previously stated, it appears neither party has presented to the Court a copy of the first charge, which was presumably dated September 23, 2009; instead, the Court has only a copy of the notice of charge of discrimination, dated September 24, 2009, with respect to the first charge.

[5]The parties appear to agree the Court should use September 23, 2009 as the filing date for determining what, if any, claims may be barred.  Defendant has stipulated that the appropriate date for calculating the 300-day period should be September 23, 2009.  [Doc. 54 at 2.]  Further, Plaintiff argued at the hearing that the Court should use the date Plaintiff filed her Intake Questionnaire under oath with the EEOC to determine whether Plaintiff's claims are time barred.  Although Plaintiff argued that date was September 16, 2009 because that is the signature date on the Intake Questionnaire, as stated above, the EEOC records indicate it was received on September 23, 2009.  [Doc. 54-3 at 2.]  Moreover, Plaintiff has not challenged Defendant's assertion that the Intake Questionnaire was filed with the EEOC on September 23, 2009.

received a warning for being in the bottom third in sales volume.[6]  At the hearing, Plaintiff

conceded the review being postponed from May to November 2008 and the subsequent

November 2008 raise may be outside the limitations period, but argued they were part of

a continuing violation and that, pursuant to *National Railroad Passenger Corp. v. Morgan*,

536 U.S. 101 (2002), when repeated acts are part of a continuing violation, courts can look

at each of the acts as long as one of the acts is within the limitations period.

First, the Court agrees these two incidents are outside the limitations period

because they occurred before November 27, 2008.  [*See* Doc. 41 at 122:2–6 (Plaintiff's

deposition testimony, indicating her review was postponed from May to November 2008);

Doc. 36 ¶ 17 (Plaintiff's affidavit, indicating her annual review was postponed from May 14,

2008 until November 24, 2008 and that she received a raise of $1,000 on November 24,

2008).]  However, because each of these incidents is a discrete act of discrimination, the

continuing violation doctrine does not apply to these acts and cannot save these untimely

claims.  *See Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, failure to

promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of

---

[6]After the hearing, the Court has determined Plaintiff alleges these specific adverse employment actions. It has been difficult to determine which employment actions Plaintiff alleges are discriminatory and/or retaliatory.  [*See* Doc. 1 (setting forth various facts in the background/facts section but (1) in the sex discrimination claim section stating in a conclusory manner that "Plaintiff was subjected to severe and pervasive discriminatory conduct" and that Plaintiff was treated "harshly in the terms and conditions of her employment" without specifying which actions were adverse employment actions and (2) in the retaliation claim section stating Plaintiff was retaliated against by "failing to promote her to Store Manager, by treating her more harshly in the terms and conditions of her employment than her male counterparts, and, ultimately, by demoting her from assistant store manager to a fully commissioned sales person").]  Moreover, as argued by Defendant, Plaintiff's factual allegations expanded in her deposition and subsequent affidavit from what she alleged in her Intake Questionnaire and Complaint.  [*See* Docs. 31-4 at 42–48 (Intake Questionnaire); 1 (Complaint); 41 (Plaintiff's deposition); 36 (Plaintiff's affidavit submitted in opposition to the motion for summary judgment).]  Accordingly, the Court directed the parties to be prepared to discuss at the hearing which employment actions Plaintiff alleges are discriminatory and retaliatory.  [Doc. 48.]  At the hearing, Plaintiff asserted the specific adverse employment actions listed above.

discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'   [A plaintiff] can only file a charge to cover discrete acts that 'occurred' within the appropriate time period.").   Accordingly, Plaintiff's claims of sex discrimination and retaliation related to the postponing of her review from May to November 2008 and the subsequent November 2008 raise are time-barred.[7]

**Claims on the Merits**[8]

### *Sex Discrimination Claim*

Defendant argues Plaintiff's sex discrimination claim must fail because Plaintiff cannot establish she was demoted because of her gender and Plaintiff's claims of sex discrimination based on other conduct are without merit.  [Doc. 31-2 at 20–24.]  The Court agrees Defendant is entitled to summary judgment as to Plaintiff's sex discrimination claim.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In 1991, Congress amended Title VII to include that "an unlawful employment practice is

---

[7]Plaintiff's counsel did not mention a failure to promote claim at the hearing on Defendant's motion for summary judgment.  However, to the extent Plaintiff maintains a failure to promote claim [*see* Doc. 1 ¶¶ 11 (indicating Plaintiff had been told she would be evaluated to fill the store manager position but instead Kenyon, a male, was hired), 40 (indicating Defendant retaliated against Plaintiff by failing to promote her to store manager)], such claim would be time-barred because Kenyon became store manager on September 29, 2008 [Doc. 31-6 at 10], more than 300 days before Plaintiff filed her charge.

[8]The Court notes Defendant's memorandum in support of its motion for summary judgment addresses a sexual harassment claim [Doc. 31-2 at 15–20] and that both parties have spent a great deal of time and energy in filings with the Court and at the hearing addressing allegedly sexually harassing behavior by Washington.  However, the Complaint does not include a sexual harassment claim [Doc. 1], and Plaintiff's counsel stipulated at the hearing that Plaintiff is not alleging a sexual harassment claim in this case but, instead, included factual allegations about sexual harassment so the Court would understand the timing of the sexual harassment and the severity of the underlying actions.  In this Report and Recommendation, the undersigned has included what she has determined are the relevant pieces of the parties' factual allegations regarding sexual harassment; primarily, that Plaintiff believed she had been subjected to sexual harassment and that Plaintiff complained about the allegedly harassing conduct.

established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m).

As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor . . . ." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982) (citing *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1113 (4th Cir. 1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace*, 539 U.S. 90. Circumstantial evidence may "includ[e] but [is] not limited to proof of the claimant's general qualifications, from which the inference of . . . discrimination may rationally be drawn independently of any presumption [of discrimination]." *Cline*, 689 F.2d at 485 (footnote omitted). To demonstrate an unlawful employment practice in these so-called mixed-motive cases, a plaintiff "need only present sufficient evidence for a

reasonable jury to conclude, by a preponderance of the evidence," that the impermissible factor was a motivating factor, i.e., "direct evidence of discrimination is not required in mixed-motive cases." *Desert Palace*, 539 U.S. at 101–02.

Alternatively, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework. *Id.* (quoting *Hill*, 354 F.3d at 285). Under this framework, an employee must first prove a prima facie case of discrimination.[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

However, the Fourth Circuit has emphasized that, "[r]egardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial,

---

[9] To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action under similar circumstances. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002); *see also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 n.2 (4th Cir. 2001) ("What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))).

or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Hill*, 354 F.3d at 286 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).  Further, the court stated,

> To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that "the protected trait . . . actually motivated the employer's decision." *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097 (internal quotation marks omitted).  The protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.* (internal quotation marks and alterations omitted); *cf. Price Waterhouse* [*v. Hopkins*], 490 U.S. [228,] 277, 109 S. Ct. 1775 (O'Connor, J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination); *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 678 (7th Cir. 2002) (noting that the pertinent inquiry is whether the decision maker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria).

*Id.*  Thus, whether a plaintiff proceeds under the first or second avenue of proof, the plaintiff's ultimate burden is to demonstrate the employer's adverse employment action was motivated, at least in part, by discrimination.

In this case, the Court must determine whether Plaintiff has demonstrated a genuine issue of material fact remains as to whether her low bonus, her being treated poorly and given a list of things to improve that was impossible for her to do, her demotion, and/or her

16

warning for being in the bottom third in sales volume[10] were motivated, at least in part, by sex discrimination.  Defendant contends Plaintiff cannot establish a prima facie case of discriminatory demotion because she cannot show she was performing her job satisfactorily at the time of her demotion and that she cannot establish a prima facie case of discrimination based on other conduct because she cannot show the other conduct amounted to adverse employment actions or that she was treated differently than similarly situated males.  [Doc. 31-2 at 20–24.]  Moreover, Defendant argues it had a legitimate, nondiscriminatory reason for her demotion.  [*Id.* at 21.]

With respect to Plaintiff's demotion, even assuming without deciding Plaintiff can establish a prima facie case of sex discrimination, the Court agrees Defendant has articulated a legitimate, nondiscriminatory reason for her demotion, and Plaintiff has failed to establish a genuine issue of material fact remains as to whether the articulated reason is pretext for unlawful discrimination.  Here, Defendant argues Plaintiff was demoted because "she did not exhibit the requisite abilities to succeed in her position as illustrated by her performance under two different store managers."  [Doc. 31-2 at 21.]  A memorandum from Plaintiff's personnel file summarizing a discussion between Plaintiff and Hand on June 30, 2008 regarding Plaintiff's performance states:

> I asked [Plaintiff] how she felt she was handling the responsibilities of management at RTG, and her response was okay for the most part, but still having some issues with the system and office and customer service procedures.  She did

---

[10] As previously stated, it has been difficult to determine which employment actions Plaintiff alleges are discriminatory and/or retaliatory.  Although Plaintiff clarified at the hearing which actions she alleges were adverse employment actions, it continues to remain unclear which adverse employment actions she alleges were motivated, at least in part, by sex discrimination and which adverse employment actions she alleges were motivated, at least in part, by retaliation.  In an abundance of caution, the Court will address each adverse employment action as being brought under a claim of sex discrimination and a claim of retaliation.

state that she felt she had an understanding of the merchandising and floor presentation of RTG. I proceeded to inform her that my observations of her performance, having been in the position for over a year, shows that she is tentative in her decision making with not only the sales group, but with the office and customers as well. I cited several examples of her allowing the sales, office or customers dictate to her what to do in certain situations instead of taking control of it. She agreed with me and commented that in her previous job she was not allowed to make decisions on her own, therefore, she was still trying to learn how to do so. I again stated that we have had previous discussions about this, when she was hired and several other times, that in the RTG culture, the management team is very hands on and decision making ability, and that I am concerned she is not understanding what is necessary to be a manager at RTG.

[Doc. 37-2.] During that discussion, Hand indicated that, in ninety days, he wanted to see significant improvement in Plaintiff's understanding of Defendant's Policy and Procedures, her management skills, and her independent decision-making. [*Id.*] Moreover, Kenyon testified that Plaintiff could not write a sale on the computer or do a credit application [Doc. 41-3 at 17:13–15] and that when Plaintiff was in charge of the store, the sales numbers dropped [*id.* at 130:21–131:6]. Kenyon also testified there were issues with Plaintiff scheduling time off and being late to work [*id.* at 115:7–21] and that he had created a document with a list of things for Plaintiff to work on, including decision-making, staying on the floor to be productive, and customer service [*id.* at 111:17–113:11].

"[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [adverse employment action].'" *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Here, Plaintiff attempts to use statistics showing

18

the number of male versus female managers and male versus female promotions and demotions in the Carolina Region from 2007 through 2011 to establish Defendant's proffered reason for demoting Plaintiff is a pretext for unlawful sex discrimination. [Doc. 35 at 4–7, 12.] Plaintiff alleges Hand had very few female managers in the higher-paying adult store positions and that he pushed females to the kids store and clearance positions. [Doc. 35 at 7.] However, the Court cannot infer from the statistical data that sex was a motivating factor in Plaintiff's demotion. Plaintiff has presented bare statistics without any explanation of the relevance of these numbers or any information about the applicant pools for the management positions or the decision-maker in hiring for those positions. As the Fourth Circuit Court of Appeals has stated,

> The usefulness of statistics depends on the surrounding facts and circumstances. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 1857, 52 L.Ed.2d 396 (1977). In a case of discrimination in hiring or promoting, the relevant comparison is between the percentage of minority employees and the percentage of potential minority applicants in the qualified labor pool. *See Hazelwood*, 433 U.S. at 308, 97 S.Ct. at 2742 (comparing proportion of African-American teachers employed by school district to proportion of qualified African-American teachers in surrounding area); *Teamsters*, 431 U.S. at 337 & n. 17, 97 S.Ct. at 1855 & n. 17 (comparing racial composition of nearby metropolitan area with racial composition of manual workforce).
>
> The mere absence of minority employees in upper-level positions does not suffice to prove a prima facie case of discrimination without a comparison to the relevant labor pool. *See Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 484 (9th Cir. 1983); *see also Hagans v. Andrus*, 651 F.2d 622, 627 (9th Cir.) (regarding low percentage of women in high-level positions as "meaningless" without evidence of pool of qualified women applicants), *cert. denied*, 454 U.S. 859, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981). Moreover, if a plaintiff offers a statistical comparison without expert testimony as to

> methodology or relevance to plaintiff's claim, a judge may be justified in excluding the evidence. *Williams*, 871 F.2d at 455 n. 1.

*Carter v. Ball*, 33 F.3d 450, 456–57 (4th Cir. 1994). Plaintiff has failed to establish a genuine issue of material fact remains as to whether Defendant's proffered reason for demoting Plaintiff is a pretext for discrimination.

With respect to the other alleged adverse employment actions—her low bonus, her being treated poorly and given a list of things to improve that was impossible for her to do, and her warning for being in the bottom third in sales volume—again, assuming without deciding Plaintiff can establish a prima facie case of sex discrimination,[11] Plaintiff has failed to create a genuine issue of material fact as to whether Defendant's proffered reasons for

---

[11]The Court is not convinced Plaintiff has established a prima facie case of discrimination because the Court is not convinced Plaintiff being treated poorly and given a list of things to improve or being given a warning constitutes an adverse employment action. *See Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (holding supervisor yelling at plaintiff during meeting, directing other employees to ignore plaintiff and spy on her, and refusing to communicate with plaintiff did not constitute adverse employment actions); *Balinao v. Gonzales*, No. 9:06-cv-0254-PMD-GCK, 2007 WL 5309203, at *14 (D.S.C. May 22, 2007) (holding, among other conduct, that giving an award to another employee for work done by plaintiff, executive staff member stating to other staff that he hated plaintiff and encouraging other staff to be insubordinate with plaintiff, ignoring plaintiff in selection process for new staff, yelling and screaming at plaintiff, falsely accusing plaintiff of not communicating with her staff, and picking on plaintiff during department meetings did not constitute adverse employment actions); *Skipper v. Giant Food, Inc.*, 187 F. Supp. 2d 490, 493 (D. Md. 2002) (holding surveillance of employee, written warnings, and disclosure of plaintiff's job performance to other employees did not constitute adverse employment actions).

Moreover, the Court is not convinced Plaintiff has established she was treated differently from similarly situated males. With respect to her bonus in December 2008, Plaintiff has offered no evidence of any other bonuses given in December 2008 and, instead, attempts to compare her bonus to Kenyon's $15,000 raise. [Doc. 35 at 12.] However, Kenyon was a store manager while Plaintiff was an assistant manager; moreover, Plaintiff attempts to compare a bonus to a raise, and Kenyon's raise was in July 2010, nineteen months after Plaintiff's bonus [Doc. 39-4 at 2]. With respect to Kenyon's treatment of Plaintiff, Plaintiff testified Kenyon was "bullish" in his management style and that other associates would have perceived him as bullish as well. [Doc. 41 at 99:15–100:25.] Simply put, Plaintiff has failed to allege Kenyon treated Plaintiff differently *because* she is female or even that he treated any male better than he treated Plaintiff. With respect to her warning for being in the bottom third in sales volume, Plaintiff likewise has failed to allege she received the warning *because* she is female. Additionally, male employees received more drastic disciplinary actions for being in the bottom third in sales volume—they were terminated. [*Id.* at 145–147.] Finally, although Plaintiff alleges Defendant manipulated sales numbers to force her to the bottom third in sales volume and has explained how this could have happened, e.g., placing sales and returns in different months or sending customers to other sales associates, she has submitted no evidence to corroborate her assertion this actually happened.

these actions—Plaintiff was told she received a lower bonus because she had just been given a raise [*see* Doc. 36 ¶ 19], Plaintiff was given a list of things to improve on after store managers were asked to evaluate their assistant store managers [Doc. 41-3 at 110:14–113:11], and Plaintiff was issued a written warning because she was in the bottom third in sales volume[12] [Doc. 39]—were a pretext for unlawful discrimination.  Other than offering statistics as discussed above, Plaintiff has failed to put forth any evidence to support her assertion that her sex was a motivating factor in any of these employment actions.[13]    Accordingly, Defendant is entitled to summary judgment on Plaintiff's sex discrimination claim.

### Retaliation Claim

Defendant argues Plaintiff's retaliation claim must fail because Plaintiff cannot establish a prima facie case of retaliation and cannot establish pretext.  [Doc. 31-2 at 24–27.]  The Court agrees Defendant is entitled to summary judgment as to Plaintiff's retaliation claim.

---

[12]Although Plaintiff alleges she was issued a final written warning for being in the bottom third [Doc. 36 ¶ 28], the warning indicates that on a progressive scale of (1) coaching, (2) verbal warning, (3) written warning, (4) final warning, this particular warning was a coaching warning [Doc. 39].

[13]From the Complaint, it does not appear Plaintiff brings a claim of hostile work environment sex discrimination.  Moreover, in response to Defendant's argument that Plaintiff's other allegations of sex discrimination—poor treatment by Kenyon and a list of things to improve and a warning—did not rise to the level of an adverse employment action, Plaintiff did not argue she asserted this conduct to allege a hostile work environment claim.  However, in an abundance of caution, the Court notes that, even if Plaintiff were attempting to allege a hostile work environment sex discrimination claim, such claim would fail.  To make out a hostile work environment claim based on sex, "a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008)) (internal quotation marks omitted). As previously discussed, Plaintiff has failed to establish any offending conduct was *because of* her sex.  Moreover, the Court is not convinced Plaintiff has established the conduct by Kenyon and/or Hand was sufficiently sever or pervasive to alter the conditions of her employment.

Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified, assisted, or participated in a Title VII investigation proceeding, or hearing under this subchapter." 42 U.S.C. § 2000d–3(a). The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). Thus, through the two clauses of the anti-retaliation provision, Title VII protects activities that can be characterized as opposing a practice that is unlawful under Title VII or as participating in a Title VII investigation, proceeding, or hearing. *Id.* at 59 (quoting 42 U.S.C. § 2000e–3(a)); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (stating "[p]rotected activities fall into two distinct categories: participation or opposition"); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (stating the first clause of the anti-retaliation provision is known as the "opposition clause," and the second clause is known as the "participation clause"). Activities protected under the participation clause—(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII—are those "essential to the machinery set up by Title VII," and therefore, Title VII prohibits employers from retaliating against employees who undertake these actions. *Laughlin*, 149 F.3d at 259 n.4 (internal quotation marks omitted) (quoting *Hasimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)).

Like discrimination claims, a plaintiff may prove a retaliation claim through direct evidence or by using the *McDonnell Douglas* burden-shifting framework.[14]  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000); *Cooper v. City of N. Myrtle Beach*, No. 4:10-cv-1676, 2012 WL 1283498, at *6 (D.S.C. Jan. 25, 2012).  Similarly, it is ultimately the plaintiff's burden to demonstrate the employer's actions were motivated, at least in part, by an intent to retaliate.  *See McDonnell Douglas*, 411 U.S. at 804; *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Cooper*, 2012 WL 1283498, at *10.

In this case, the Court must determine whether Plaintiff has demonstrated a genuine issue of material fact remains as to whether her low bonus, her being treated poorly and given a list of things to improve that was impossible for her to do, her demotion, and/or her warning for being in the bottom third in sales volume[15] were motivated, at least in part, by retaliation.  Defendant contends Plaintiff cannot establish a prima facie case of discriminatory demotion because her report to Defendant does not constitute protected activity and she cannot establish a causal connection between the alleged protected activity and a retaliatory act.  [Doc. 31-2 at 24–25.]  Moreover, Defendant argues Plaintiff cannot establish pretext.  [*Id.* at 26–27.]

---

[14]To establish a prima facie case of retaliation, the plaintiff must demonstrate "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action."  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).  To prove a causal connection existed between the protected activity and the asserted adverse action, a plaintiff must show the employer took the adverse action "'*because* the plaintiff engaged in protected activity.'"  *Holland*, 487 F.3d at 218 (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

[15] As previously stated, in an abundance of caution, the Court will address each alleged adverse employment action as being brought under a claim of sex discrimination and a claim of retaliation.  *See supra*, note 10.

Here, no genuine issue of material fact remains as to Plaintiff's retaliation claim because Plaintiff has failed to demonstrate retaliation was a motivating factor in the allegedly adverse employment actions—specifically, Plaintiff has failed to show evidence of any causal connection between her complaints to Defendant or her filing an EEOC charge of discrimination and her low bonus, her being treated poorly and given a list of things to improve that was impossible for her to do, her demotion, and/or her warning for being in the bottom third in sales volume.  Plaintiff has provided no evidence other than her own assertions that suggests a nexus between her complaining of sexual harassment by Washington and any alleged adverse employment action.  Plaintiff complained about sexual harassment by Washington on June 20, 2007; August 2, 2007; and September 1, 2007.  The first alleged employment action—Plaintiff's low bonus—occurred in December 2008, fifteen months after Plaintiff's last complaint about sexual harassment.  The other alleged employment actions—her being treated poorly and given a list of things to improve, her demotion, and her warning for being in the bottom third in sales volume[16]—occurred even later, in June 2009, August 2009, and December 2009.  The Fourth Circuit has held that a four month gap between protected activity and an adverse action was insufficient to prove causation. *Shields v. Fed. Express Corp.*, 120 F. App'x 956, 963 (4th Cir. 2005); *see also Jackson v. Mayor & Balt. City*, Civil No. JFM 08-3103, 2009 WL 2060073, at *7 (D. Md. July 14, 2009) (noting that "[s]everal courts have found that a period of six months to a year between the protected activity and adverse employment action is, without other

---

[16]As previously stated, the Court is not convinced Plaintiff being treated poorly and given a list of things to improve or being given a warning constitutes an adverse employment action. *See supra*, note 11.

evidence of causation, insufficient as a matter of law to establish a prima facie case of retaliation"). Because Plaintiff has offered no other evidence of causation,[17] she cannot establish her adverse employment actions were causally related to her protected activity.

Moreover, even if Plaintiff could establish the allegedly adverse employment actions were causally related to her protected activity and, therefore, could establish a prima facie case of retaliation, she has failed to present any evidence of pretext following Defendant's articulated legitimate, nonretaliatory explanations for these employment actions. To prove an employer's articulated reason is a pretext for retaliation, a plaintiff "must prove '*both* that the reason was false, *and* that [retaliation] was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St Mary's Honor Ctr.*, 509 U.S. at 515). Here, Plaintiff fails to direct the Court to any evidence to establish Defendant's articulated reason for giving her a lower bonus, giving her a list of things to improve, demoting her, or warning her about being in

---

[17]Additionally, that Kenyon was bullish toward everyone and that was his management style [*see* Doc. 41 at 99:15–100:25] cuts against a finding that Kenyon treated Plaintiff poorly in retaliation for her complaints about sexual harassment. Additionally, that others received more drastic disciplinary actions for being in the bottom third in sales volume—they were terminated [*see id.* at 145–147] also cuts against a finding that Plaintiff received a warning in retaliation for her complaints.

The Court notes Plaintiff's warning for being in the bottom third in sales volume occurred in December 2009, less than three months after Plaintiff filed her first charge of discrimination with the EEOC and one month after Plaintiff's first written complaint to Defendant's human resource department, additional instances of protected activity. [*See* Doc. 39.] However, Plaintiff testified she was aware of a program designed to discipline sales associates for being in the bottom third in sales volume; in fact, when Plaintiff was assistant store manager, she disciplined employees for being in the bottom third. [Doc. 41 at 143:6–144:5.] Additionally, as previously stated, other employees received more drastic disciplinary actions for being in the bottom third in sales volume—they were terminated. [*Id.* at 145–147.] Plaintiff's only argument regarding the causal connection between her engaging in protected activity and being disciplined for being in the bottom third is her argument there was a plan in place to create a "termination sandwich" where a male employee would have been fired, then Plaintiff, then another male employee to avoid having Plaintiff's termination look like retaliation. However, other than her own conclusory statements, Plaintiff offers no evidence to support her allegations regarding a "termination sandwich," and Plaintiff cannot rely on conclusory statements alone to create a triable issue of fact to survive summary judgment, *see Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998; *Evans*, 80 F.3d at 960; *Cook v. CSX Transp. Corp.*, 988 F.2d 517, 512–513 (4th Cir. 1993).

the bottom third was false or that retaliation was the real motivation in these disciplinary decisions.  Accordingly, because Plaintiff has not established her prima facie case and, even if she had established her prima facie case, she has failed to demonstrate Defendant's articulated reason is a pretext for retaliation, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 21, 2013
Greenville, South Carolina